## In re Anonymous No. 10 D.B. 85 and 1 D.B. 86

Disciplinary Board Docket Nos. 10 D.B. 85 and 1 D.B. 86.

KELLER, *Member*, February 27, 1987—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the disciplinary board of the Supreme Court of Pennsylvania submits its findings and recommendations respecting the above captioned petition for discipline.

## HISTORY OF THE PROCEEDINGS

(1) Respondent. [     ], was an attorney admitted to practice law in the Commonwealth of Pennsylvania, having been admitted on February 16, 1965, with an attorney registration number of [     ]. He maintained his office at [     ]. Respondent was born in 1939.

(2) By order of the Supreme Court of Pennsylvania dated January 20, 1984, respondent was suspended from the practice of law "commencing from the date of this order and terminating on February 1, 1985 . . ."

(3) Pursuant to the power granted by Rule 207(b)(2) and (3) and in compliance with Rule 208(b)(1), Pa.R.D.E., petitioner files against respondent the following charges of professional misconduct in violation of the Code of Professional Responsibility (204 Pa. Code Ch. 81).

Each of the separate disciplinary actions are reviewed individually.

## · CHARGE I — [A]
## STATEMENT OF FACTS — [A]

On or about May 20, 1983, respondent filed a landlord-tenant complaint in the office of District Magistrate [B] of [     ] on behalf of his client [C],

seeking eviction and damages against tenants [D] and [E].

2. The property in question was owned as tenants in common by [C] and his ex-wife, [A], a fact of which respondent was aware, and was located at [      ].

3. On or about May 17, 1983, respondent had approached [A] directly and asked her to sign a document giving her consent as co-owner to an eviction action against [D] and [E].

4. At the time of said approach, respondent knew or reasonably should have known that [A] had been and was represented on domestic relations matters, including all dealings pertaining to the subject real estate, by [F], Esq., of [      ].

5. Respondent had not obtained consent from Attorney [F] to communicate directly with [A].

6. In the discussion on or about May 17, 1983, [A] refused to sign the consent document respondent presented to her and advised respondent that she was not in agreement with any eviction action being pursued by [C].

7. A magistrate's hearing on the eviction action was held before Magistrate [B] on or about June 13, 1983.

8. At said hearing, tenants' counsel, [G], Esq., objected to the eviction action on the basis that it was being brought by only one of the tenant in common owners and that there was no indication that [A] had consented to the prosecution of the eviction action.

9. In response to said objection, respondent took the stand as a witness in the action, was duly sworn, and testified under oath that he had discussed the case with [A] and that she had stated to respondent her consent to the prosecution of the eviction action.

10. As a result of the testimony in the case, including respondent's testimony, a judgment of eviction was entered by the magistrate on June 14, 1983 against [D] and [E].

11. Respondent was charged with violating the Disciplinary Rules of the Code of Professional Responsibility:

(a) DR 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) DR 1-102(A)(5), dealing with conduct that is prejudicial to the administration of justice;

(c) DR 7-102(A)(4), dealing with knowingly using perjured testimony or false evidence;

(d) DR 7-102(A)(5), dealing with knowingly making a false statement of law or fact;

(e) DR 7-102(A)(6), dealing with participation in the creation or preservation of evidence when it is known or is obvious the evidence is false; and

(f) DR 7-104(A)(1), dealing with communicating with a party known to be represented by a lawyer.

12. Respondent's proferred defense and explanation as to the charges was that he believed that his testimony was correct. Also that he had handled a prior legal matter for Mr. and Mrs. [C] ([A] was formerly married to [C]). Additionally, respondent was under the belief that [B's] objection to the eviction rested solely on her strong desire not to have her husband re-occupy the premises. Thus having obtained an affidavit from her husband not to re-occupy the premises, respondent mistakenly surmised that [B's] objection was satisfied.

## DISCUSSION — [B] MATTER

The board feels that respondent believed at the time he took the stand that ex-wife consented to the eviction action. In view of this belief, the conduct

did not involve dishonesty, fraud, deceit, or willful misrepresentation.

With respect to violation (b), which deals with conduct that is prejudicial to the administration of justice, the board concludes that respondent did not take sufficient steps in view of his training as a lawyer to do everything possible to conclude that ex-wife did, indeed, consent to the eviction action.

With respect to violation (f), which deals with communicating with a part known to be represented by a lawyer, the record is clear that respondent violated this rule. This cannot be disputed, particularly in view of Exhibit R-46 which is a letter from [G] Esq., to respondent, informing him that he has spoken with counsel for the ex-wife and that said counsel informed [G] that said counsel continues to represent the ex-wife who "does not desire to evict the current tenants."

## CONCLUSIONS OF LAW — [A]

Respondent has, by his conduct, violated the following disciplinary rules of the Code of Professional Responsibility:

(b) DR 1-102(A)(5), dealing with conduct that is prejudicial to the administration of justice.

(f) DR 7-104(A)(1), dealing with communicating with a party known to be represented by a lawyer.

## CHARGE II — [H]
## STATEMENT OF FACTS — [H]

1. [H] was divorced from [I], and on or about September 18, 1979 the parties entered into a settlement as to distribution of the proceeds from the sale of the marital home.

2. Pursuant to that settlement, the sum of $5,424.88 was to be held in escrow by [J], Esq.,

counsel for [I], pending agreement between the parties on who was to be responsible for payment of certain remaining joint debts.

3. On July 28, 1981, respondent wrote a letter to [H] assuming representation of her and agreeing to pursue a final resolution as to distribution of the escrowed monies.

4. Some negotiations were conducted by mail between respondent and Attorney [J] between August 1981 and May 1982 as to settlement on the distribution of monies, but as of May 12, 1982, Attorney [J] reported to respondent that he no longer knew the whereabouts of his client, [I], and was unable to communicate with the client.

5. Respondent engaged in no further negotiations nor any other known activity relative to the escrowed monies between May of 1982 and March of 1983.

6. On March 14, 1983, respondent wrote to [H] seeking approval to pursue a settlement. [H] replied on March 17, 1983, requesting respondent to proceed.

7. It was not until August 2, 1983 that respondent filed a petition and rule, docketed at No. [   ] in [   ] County, seeking release and appropriate distribution of the escrowed monies.

8. After filing of an answer to his petition, respondent did nothing to advance the matter, but allowed opposing counsel to meet ex parte with the judge and accepted opposing counsel's advice that the petition was not in the proper form and should be resubmitted.

9. Respondent did not send said amended petition to [H] for signature until November 23, 1983.

10. [H] returned the executed petition to respondent on or about December 19, 1983, and requested that respondent communicate with attorney [J] to

seek a reduction in the amount of fees he was claiming against the escrowed monies.

11. Between December 19, 1983 and March 16, 1984, [H] telephoned and wrote to respondent's office on several occasions to ascertain the status of her case, but received no response whatsoever.

12. Respondent in fact never filed the amended petition and rule.

13. On March 16, 1984, [H] wrote to respondent requesting prompt return of her file so that she could secure other counsel. She received no response from respondent or his office for over seven weeks, despite several intervening efforts by proposed successor counsel, [K], Esq., to contact respondent and his firm.

14. [H's] legal matter was finally concluded in June 1984 by [L], Esq., an associate in respondent's firm, by means of a brief petition and short hearing.

15. By Pennsylvania Supreme Court order of January 20, 1984, and amended order of January 26, 1984, respondent was suspended from the practice of law, but he failed to, at any time, notify [H] of said suspension, in violation of the Pennsylvania Rules of Disciplinary Enforcement.

16. Respondent was charged with violating the disciplinary rules of the Code of Professional Responsibility:

(a) DR 6-101(A)(3), dealing with neglect of a legal matter entrusted to a lawyer.

(b) DR 7-101(A)(1), dealing with failure to seek the lawful objectives of the client through reasonably available means.

(c) DR 7-101(A)(2), dealing with failure to carry out a contract of employment.

(d) DR 7-102(B)(4), dealing with failure to promptly deliver to the client funds, securities or

other properties which the client is entitled to receive.

(e) Rule 217 Pa.R.D.E., dealing with the sending of required notices to clients upon the attorney's suspension or disbarment.

## DISCUSSION — [H] MATTER

The board feels that respondent was neglectful in his representation of ex-wife in not pursuing her request for distribution of funds held in escrow devired from the sale of marital property. Respondent had reasonably available means to seek the objectives of his client as eventually shown by the final disposition through a person who was his associate prior to his suspension from the practice of law. In failing to pursue the disposition of his client's case in a timely manner, he failed to carry out his contract of employment as an attorney.

Respondent admitted on the record and before the members of the committee that he did not notify his client, ex-wife, that he had been suspended from the practice of law and, on the contrary, continued to represent her after the suspension.

With regard to DR 9-102(B)(4), inasmuch as Respondent did not hold his client's funds, securities other property, we conclude that he did not violate this rule.

## CONCLUSIONS OF LAW — [H] MATTER

Respondent has by his conduct violated the following disciplinary rules of the Code of Professional Responsibility and rule of disciplinary enforcement:

(a) DR 6-101(A)(3), dealing with neglect of a legal matter entrusted to a lawyer.

(b) DR 7-101(A)(1), dealing with failure to seek the lawful objectives of the client through reasonably available means.

(c) DR 7-101(A)(2), dealing with failure to carry out a contract of employment.

(e) Rule 217 Pa.R.D.E., dealing with the sending of required notices to clients upon the attorney's suspension or disbarment.

## CHARGE III - [   ]
## STATEMENT OF FACTS — [   ]

1. In April of 1978, the respondent was engaged in general practice in [   ], Pennsylvania, and was engaged as solicitor of the [M] Bank of [   ].

2. On April 7, 1978, respondent and his wife borrowed the sum of $30,000 from the bank. In evidence of this transaction, they executed a judgment note and gave the bank as security a first mortrgage and bond on their residence at [   ].

3. In order to obtain the loan, respondent represented to the bank that held title to the realty against which the mortgage was given.

4. The procedure of the [M] Bank in mortgage matters was to turn over the mortgage form and certificate of title form to the customer's attorney for preparation. Upon return of an executed bond and warrant, the bank would disburse the proceeds of the loan to the attorney as an escrow agent, expecting that after settlement the attorney, as a fiduciary, would protect the bank with valid assurances of the purchaser's title.

5. Respondent offered to serve as his own attorney in the April 1978 loan transaction, and upon execution of the bond and warrant, the bank released the proceeds to respondent with the expectation he would purchase the property, provide assurances of

title, and record the mortgage.

6. In allowing respondent to serve as his own attorney, the bank relied heavily upon respondent's veracity and professional responsibility, and expected that he would exercise his professional judgment in a competent manner for protection of the bank's interest.

7. The bank released the proceeds of the loan to respondent in his professional capacity as an attorney and escrow agent, and not in his personal capacity as borrower, with the expectation that he would handle the transaction in a professional manner as a fiduciary.

8. At the time of the loan transaction, respondent did not hold or acquire record title to the residential premises on which the mortgage was granted, as no deed granting him title was on the record or could be located.

9. Because he did not have record title, respondent never recorded the mortgage against his residence.

10. As part of the same transaction, respondent purchased and received a deed for additional real estate adjacent to his residence, but he never recorded that deed or mortgage against that property either.

11. After the transaction respondent represented repeatedly to the president of the bank that he would record the mortgage and provide the assurances of title, but he never did so. Respondent knew when he made these representations that he could not perform those responsibilities, as he had never received record title on the residential portion of the real estate.

12. The note and mortgage provided for 240 monthly payments of $269.92 each.

13. Respondent defaulted on the loan on August 7, 1982, and has been continually in default since that time.

14. Respondent kept the original mortgage and application forms in his possession, where they were lost or destroyed at an unknown date, between April 1978 and March 1985.

15. In 1983, the [M] Bank was acquired and taken over by [N] Bank. Thereafter, [ ] engaged counsel to attempt to collect on the loan, and discovered for the first time that respondent had never recorded the bond and mortgage and that he did not hold record title to the premises.

16. [N] brought an action against respondent in the Court of Common Pleas for [ ] County, docketed to no. [ ].

17. Judgment by confession was subsequently entered against respondent in favor of [N] Bank, [ ], in the amount of $61,579.25.

18. Neither [M] Bank of [ ] nor [N] has recovered anything on the loan, and [ ] has been unable to foreclose on the mortgage because of respondent's failure to record the mortgage.

19. Respondent was charged with violating the following disciplinary rules of the Code of Professional Responsibility:

(a) DR 1-102(A) (3), illegal conduct involving moral turpitude;

(b) DR 1—102(A) (4), conduct involving dishonesty, fraud, deceit, or misrepresentation;

(c) DR 1-102(A) (6), conduct that adversely reflects on his fitness to practice law;

(d) DR 5-101(A), accepting employment if the exercise of his independent professional judgment on behalf of his client will be affected by his own financial, business, property, or personal interests;

(e) DR 5-104(A), entering into a business transaction with a client with differing interests;

(f) DR 6-101(A) (3), neglecting a legal matter entrusted to him;

(g) DR 7-101(A) (1), intentionally failing to seek the lawful objectives of his client;

(h) DR 7-101(A) (2), intentionally failing to carry out a contract of employment;

(i) DR 7-101(A) (3), intentionally prejudicing or damaging his client in the course of the professional relationship;

(j) DR 9-102(B) (2), failure to keep properties of a client safe;

(k) DR 9-102 (B) (3), failure to maintain properties of a client;

(l) Dr 9-102(B) (4), failure to deliver property a client is entitled to receive.

## DISCUSSION — [M] MATTER

The board feels that not only did petitioner properly cite respondent for violations which he committed, but respondent admitted the wrongdoing and submitted to the hearing committee that he felt he should be properly disciplined.

Respondent misrepresented that he had record title to the property of concern when applying for a mortgage loan with the bank. Such misrepresentation was not only dishonest but also deceitful and fraudulent. Respondent certainly knew, in his independent judgment, that his own personal interest would adversely affect his client, the bank, by allowing himself to be employed as counsel for the bank in connection with his own mortgage application. The interests between the bank and respondent, under the circumstances, are quite different and respondent violated the disciplinary rules in entering into this transaction as counsel for the bank.

By not recording his deed and/or by not recording a mortgage, respondent neglected a matter entrusted to him by the bank. In this same regard, he failed to seek the lawful objectives of his client and, because he was well aware of this, he intentionally violated the disciplinary rules.

Respondent's violations have seriously damaged his client, the bank, in that there was, in fact, no collateral for the mortgage. Therefore, the bank has been unable to pursue default on a mortgage through collateral. It goes without saying under these circumstances, that respondent failed to keep the property of the bank safe and, beyond that, failed to maintain the property of the bank. In the same regard, respondent failed to deliver the property that the bank was entitled to receive, this property being money which would have been received by sale of collateral property.

There can be no question that respondent failed to carry out his contract of employment with the bank and that all of his activities adversely reflect on his fitness to practice law.

All violations cited by petitioner with the exception of (a) have been substantiated by the testimony taken before the hearing committee. Concerning the charge relating to illegal conduct, the board adopts the committee finding that petitioner did not meet its burden of proof in this regard.

## CONCLUSIONS OF LAW — [M] MATTER

Respondent has by his conduct violated the following disciplinary rules of the Code of Professional Responsibility:

(b) DR 1-102(A) (4), conduct involving dishonesty, fraud, deceit, or misrepresentation.

(c) DR 1-102(A) (6), conduct that adversely reflects on his fitness to practice law.

(d) DR 5-101(A), accepting employment if the exercise of his independent professional judgment on behalf of his client will be affected by his own financial, business, property, or personal interests.

(e) DR 5-104(A), entering into a business transaction with a client with differing interests.

(f) DR 6-101(A) (3), neglecting a legal matter entrusted to him.

(g) DR 7-101(A) (1), intentionally failing to seek the lawful objectives of his client.

(h) DR 7-101(A) (2), intentionally failing to carry out a contract of employment.

(i) DR 7-101(A) (3), intentionally prejudicing or damaging his client in the course of the professional relationship.

(j) DR 9-102(B) (2), failure to keep properties of a client safe.

(k) DR 9-102(B) (3), failure to maintain properties of a client.

(l) DR 9-102 (B) (4), failure to deliver property a client is entitled to receive.

## GENERAL DISCUSSION AND RECOMMENDATION

(1) [A]

(2) [H]

(3) [M]

The board is fully cognizant of its responsibility as set forth by the court in *Office of Disciplinary Counsel v. John F. Keller,* 509 Pa. 573, 506 A.2d 872 (1986):

"The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system."

The nearly 400 pages of the transcript have been reviewed thoroughly and the record clearly establishes numerous violations of our code by respondent.

In passing on the discipline to be assessed against respondent, the board took into consideration the following redeeming factors:

(1) Respondent was a graduate of [ ] Law School;

(2) Respondent served our country in the United States Marine Corps and served on active duty for six months;

(3) Respondent suffered from psychological problems for which he received treatment for approximately two years;

(4) Respondent was experiencing marital difficulties;

(5) Respondent's incarceration for violation of income tax laws;

(6) Respondent's attempted cooperation to repay the Internal Revenue Service.

A review of the transcript led the board to believe that respondent was contrite and that his serious misadventures, though egregious, that he is salvageable. Our duty is to protect the public but not in return for a total destruction of one's professional career.

In recommending the three year suspension for respondent, the board strongly feels that the public will be protected and justice will be served. Costs are to be paid by respondent.

Mr. Brown abstained.

Mr. Douglas recused himself.

Messrs. Helwig and Curran did not participate in the adjudication.

## ORDER

NIX, C. J., And now, this September 3, 1987, a rule having been issued by this court on May 29, 1987, to show cause why respondent should not be disbarred and no response thereto having been

filed, the rule is hereby made absolute; and it is ordered that [respondent] be and he is disbarred from the bar of this commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to Rule 208(g), Pa.R.D.E.